637 A.2d 761

**Mary GRKMAN, Petitioner,**

v.

**DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Nov. 18, 1993.

Decided Feb. 3, 1994.

598

Linda Broker, for petitioner.

Jason W. Manne, Asst. Counsel, for respondent.

Before McGINLEY and KELLEY, JJ., and NARICK, Senior Judge.

KELLEY, Judge.

This petition for review is on behalf of Mary Grkman, a resident of the Westmoreland Manor Nursing Home (facility) who has been receiving intermediate care since December 12, 1989. In November 1991, the facility's plan of care team determined Grkman no longer needed intermediate level of care. On November 19, 1991, the facility sent written notice informing Grkman's family of its plan to transfer her to their domiciliary care program.

On December 15, 1991, a timely appeal and request for intervention was filed with the Office of Hearings and Appeals, Department of Public Welfare (DPW) by Grkman's brother. Intervention by Grkman was granted. Grkman continued to receive intermediate care pending the hearing and decision.

On March 30, 1992, Grkman was reevaluated. The diagnoses of Grkman were as follows: "sensory motor polyneuropathy sec vit def.—hx; hx-pseudomucinous cystadenocarcinoma of ovaries—evidence reoccurrence—1977 rx radiation/chemo; bilateral cataracts." Grkman's medication consisted of "vitamin B–12; two Tylenol tablets prn for pain or temperature; 30 cc mon prn for constipation; and Lasix 40 ng po Monday, Wednesday, Friday."

On April 6, 1992, the attending physician certified that Grkman did not meet the criteria for intermediate care and agreed with the transfer to domiciliary care.

Grkman submitted a letter to the hearing officer dated March 17, 1992, signed by Miriam Cohen, MSW, Forbes

Regional Health Center Geriatric Assessment Center, indicating that the transfer of Grkman from the facility's intermediate care unit to their domiciliary care program would be detrimental to Grkman's psychological well being.

After a hearing on May 13, 1992, the hearing officer denied Grkman's appeal concluding that Grkman did not require nursing and related health and medical services in the context of a planned program of health care management. The hearing officer determined that Grkman's condition had improved; that she was not under structured medication; and that the attending physician agreed with the decision to transfer Grkman to domiciliary care. In addition, the hearing officer pointed out that there was no medical documentation presented to substantiate that the transfer would be detrimental to Grkman's mental health.

■ On October 23, 1992, the Director of the Office of Hearings and Appeals affirmed the decision of the hearing officer. On November 19, 1992, the Secretary of DPW granted Grkman's request for reconsideration. On December 11, 1992, a final order on the merits was entered by the Secretary of DPW upholding the October 23, 1992 order of the Office of Hearings and Appeals because DPW provided sufficient documentation to support its determination that Grkman's level of care was suitable for domiciliary care. This appeal followed.[1]

On appeal, Grkman presents two issues for review:

1. Whether there was sufficient evidence to support DPW's decision to change Grkman's level of care from intermediate nursing home care to domiciliary care; and

2. Whether DPW failed to address as required, mental and psychosocial well-being issues in determining Grkman's level of care and the appropriateness of the discharge planning.

1. This court's scope of review is limited to a determination of whether constitutional rights were violated, an error of law was committed, or necessary findings are not supported by substantial evidence. *Ream v. Department of Public Welfare*, 93 Pa.Commonwealth Ct. 190, 500 A.2d 1274 (1985).

Grkman argues that the hearing officer did not have substantial evidence to sustain her findings of fact because the hearing officer relied on numerous hearsay statements.

The standards for discharge from a nursing facility have been established by the Omnibus Budget Reconciliation Act of 1987 (OBRA–87). Under OBRA, a resident may be transferred from a facility if the transfer or discharge is appropriate because the resident's health has improved sufficiently so the resident no longer needs the services provided by the facility. 42 U.S.C. § 1396r(c)(2)(A)(iii).

In addition, DPW has promulgated regulations regarding the procedure for appealing a discharge or transfer of a resident from a nursing facility under section 1396r of OBRA. 55 Pa.Code § 1181, Appendix N [2] provides, in part, as follows:

> As to a discharge or transfer to meet the resident's needs or because improvements in the resident's health no longer support the need for nursing facility care, [DPW] will affirm the decision where there is sufficient documentation in the resident's clinical record, entered by the resident's physician, to support the decision (unless the resident's physician shall have later documented a change in the disposition of the case) and there is evidence that the resident's need can be met by the situation to which the resident is to be discharged or transferred.

■ The burden of proof is on the resident to show that the provider facility's determination to transfer him or her is in error. 55 Pa.Code § 1181, Appendix N. If the resident fails to produce evidence to show that the provider facility's decision is in error, DPW must affirm the decision. *Id.*

■ A review of the record reveals that the hearing officer specifically found that Grkman's attending physician agreed with the decision to transfer Grkman to domiciliary care.

**2.** According to the Pennsylvania Code, Appendix N of 55 Pa.Code § 1181 was adopted December 23, 1988 and became effective January 1, 1989. On July 24, 1992, effective July 1, 1992, Appendix N was reserved; however, since Grkman's appeal was filed with the Office of Hearings and Appeals prior to Appendix N being reserved, the provisions of 55 Pa.Code § 1181, Appendix N, governs the present appeal.

This agreement by the physician is stated in the physician's progress report, Exhibit C–4, which Grkman contends is hearsay. Specifically, Grkman argues that the hearing officer relied on a progress report signed by a physician which contains the comment "[on] further consideration am told [patient] stands walks well [and] did climb stairs. I agree [with] transfer to dom. care." *See* Original Record, Exhibit C–4. Grkman contends that the physician's progress report is hearsay upon hearsay, as it is not clear as to who told the physician this information or whether the source was reliable or was the physician himself reporting from first-hand knowledge.

DPW argues that notwithstanding the hearsay character of the physician's statement, consideration of the physician's statement is permitted because both federal and state law require that a transfer or discharge decision be based on documentation in the clinical record. Under OBRA and DPW regulations, a decision to transfer or discharge a resident from a nursing facility must be based on documentation in the clinical record. *See* 42 U.S.C. § 1396r(c)(2)(A); 55 Pa.Code § 1181, Appendix N.

In *Ploof v. Commonwealth,* 139 Pa.Commonwealth Ct. 235, 590 A.2d 1318 (1991), this court held that a physician's hearsay statement was admissible under the Vehicle Code as evidence in incompetency proceedings because the Vehicle Code clearly intended that medical reports be competent evidence in such a proceeding. The same rationale is true in the present situation.

■ Both federal law and state regulations clearly intend that documentation in the clinical record of a resident of a nursing facility be competent evidence to support a decision by a provider facility to transfer or discharge a resident. This is especially true when the resident's health has improved sufficiently so that the resident no longer needs the services of the facility. Therefore, the physician's statement was admissible as part of the clinical record to support the facility's decision

to transfer Grkman from intermediate care to domiciliary care.

■ In addition, a review of the entire record in this case shows that the hearing officer's decision was based upon substantial evidence. Grkman had the burden of proof to show that the hearing officer's decision was in error. 55 Pa.Code § 1181, Appendix N. It was within the province of the hearing officer to reject or accept any evidence Grkman submitted. *Geriatric and Medical Services v. Department of Public Welfare,* 151 Pa.Commonwealth Ct. 209, 616 A.2d 746 (1992).

■ Finally, Grkman contends that DPW failed to consider mental and psychosocial well-being issues in determining Grkman's level of care and the appropriateness of any discharge planning as required by OBRA and state regulations. *See* 42 U.S.C. § 1396r(b)(2)(A); 28 Pa.Code § 211.10(c). We disagree. The decision of the hearing officer clearly shows that Grkman's mental and psychosocial well being was considered.

Grkman relies on a letter from a social worker, Miriam Cohen of Forbes Health System Geriatric Assessment Center, wherein Ms. Cohen stated that the transfer to domiciliary care would be detrimental to Grkman's psychological well being because she regards the facility as her home. In addition, Grkman testified that she did not want to leave the facility as she is close to her roommate and has friends at the facility.

However, the hearing officer specifically rejected Ms. Cohen's letter and the testimony of Grkman, concluding that there was no medical documentation presented to substantiate that the transfer would be detrimental to Grkman's mental health. The hearing officer stated that although she was sympathetic with Grkman's desire to remain at the facility, she did not have the authority to change DPW regulations. It is clear that the hearing officer did take into consideration Grkman's mental health in rendering a decision.

Based on the clinical record and the evidence submitted by Grkman on her behalf, the hearing officer determined that

Grkman's transfer to domiciliary care by the facility was a proper decision. As this court has already concluded, that decision was based upon substantial evidence.

Accordingly, the order of the Secretary is affirmed.

## ORDER

NOW, this 3rd day of February, 1994, the order of the Secretary of the Department of Public Welfare, dated December 11, 1992, at No. 65K0238–001, is hereby affirmed.